IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| RUBIN CRAIN, IV, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:12-CV-4063-L (BF) |
| § | |
| CESAR AUGUSTO MENCHACA, et al., § | |
| § | |
| Defendants. § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b), and a Standing Order of Reference from the District Court, this case has been referred to the United States Magistrate Judge for pretrial management. Before the Court is the Motion to Dismiss of Defendant Parkland Hospital and Brief in Support Thereof (doc. 41, "Motion to Dismiss"), filed on March 22, 2013. Plaintiff Rubin Crain, IV ("Plaintiff") filed his response to the Motion to Dismiss (doc. 48) on April 23, 2013. Parkland filed its reply on April 30, 2013. For the following reasons, this Court recommends that the District Court **GRANT** the Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and dismiss Plaintiff's claims against Parkland.

## Background

Plaintiff, a state prisoner, is proceeding *pro se* and originally filed his complaint (doc. 3) against various defendants on October 11, 2012, alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983. On January 4, 2013, Plaintiff filed a motion to amend his complaint (doc. 14) which the District Court granted. Upon this Court's recommendation, the District Court dismissed several defendants from the lawsuit, however, Cesar Augusto Menchaca ("Menchaca") and Parkland Health & Hospital System ("Parkland") were not dismissed. Additionally, upon

Plaintiff's request, this Court subsequently allowed Plaintiff to amend his complaint to add Nurses Now International ("NNI") as a defendant and any corresponding claims against NNI (doc. 36).

Plaintiff's allegations stem from his hospitalization at Parkland from April 9, 2012, through May 11, 2012. (Pl.'s Compl. at 4.) Plaintiff avers that on April 9, 2012, he was transferred from the Dallas County Jail to Parkland due to an infection in his right index finger. (*Id.*) Plaintiff alleges that Parkland performed two operations on his finger on April 9 and April 13, 2012. (*Id.*) Plaintiff claims that Menchaca, a nurse at Parkland, conducted two physical examinations, neither of which Plaintiff consented to, wherein he fondled Plaintiff's genital area. (*Id.*) Plaintiff alleges that these incidents occurred on April 25 and May 3, 2012. (*Id.*) Following the second physical examination, Plaintiff reported the sexual assault to the on-call nurse and filed a grievance and complaint against Menchaca with Parkland. (*Id.*) Similarly, Plaintiff also filed an inmate grievance with the Dallas County Sheriff Detention Bureau for not ensuring his safety while at Parkland, and a complaint with the Dallas Police Department. (*Id.* at 4-5.)

Parkland has filed a motion to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief can be granted or, in the alternative, for a more definite statement under Rule 12(e). Because Plaintiff is proceeding *pro se,* this Court will consider both his original complaint and his amended complaint (doc. 14, entitled "motion to amend complaint") in determining whether Plaintiff has stated a claim upon which relief can be granted.

## Rule 12(b)(6) Standard of Review

While the court is to liberally construe the pleadings of *pro se* litigants, *pro se* parties are not exempt from complying with court rules of procedural and substantive law. *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981). FED. R. CIV. P. 8(a)(2) provides that "[a] pleading that states a claim for

relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." According to the United States Supreme Court, Rule 8(a)(2) requires a pleading to have "facial plausibility." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must be able to draw the reasonable inference from the pleading that the defendant is liable for the misconduct alleged. *Id*. (citing *Twombly*, 550 U.S. at 556). A defendant may seek a Rule 12(b)(6) dismissal if a pleading fails to establish facial plausibility. *See* FED. R. CIV. P. 12(b)(6); *id*. at n.3.

Although a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action is not sufficient. *Twombly*, 550 U.S. at 555. Factual allegations must be sufficient to raise a right to relief above the speculative level. *Id.* at 555-56. Moreover, if "the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so," a court may dismiss a claim that fails to meet the pleading requirements without granting the plaintiff leave to amend his complaint again. *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000).

In deciding a motion to dismiss, the court does not evaluate a plaintiff's likelihood of success; the court only determines whether a plaintiff has stated a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). A court generally cannot look beyond the pleadings when resolving a Rule 12(b)(6) controversy. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

**Analysis**

**42 U.S.C. § 1983**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983.[1] In order to be successful on a § 1983 claim, a plaintiff must prove two elements: 1) that he was deprived of a right secured by the Constitution or laws of the United States, and 2) that an individual acting under the color of state law violated that right. *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994). In addition, because Parkland is owned by Dallas County and is a governmental entity,[2] Plaintiff's claim must be premised upon a policy or custom officially adopted by Parkland which deprived him of a federally protected right. *See Kinzie v. Dallas County Hosp. Dist.,* 239 F.Supp.2d 618, 624 (N.D. Tex. 2003), *aff'd,* 106 Fed. Appx. 192 (5th Cir. 2003).

---

[1] Section 1983 provides, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

[2] In its Motion to Dismiss, Parkland contends that it is not a jural entity capable of being sued because Plaintiff refers to Parkland as "Parkland" or "Parkland Hospital" as opposed to "Parkland Health & Hospital System" or "Dallas County Hospital District." (Def.'s Mot. to Dismiss at 13-14.) This argument lacks merit. It is clear from Plaintiff's complaints that he alleges that he was *transferred* from the jail to Parkland, and not that he was just being treated by a health center within the jail, as Parkland appears to contend. Parkland informs the Court that the correct legal entity to sue is the Dallas County Hospital District d/b/a Parkland Health & Hospital System. (*Id.* at 14.) Parkland Health & Hospital System is the named-defendant in this case and the Dallas County Hospital District is the legal entity which Plaintiff intended to sue. The Dallas County Hospital District d/b/a Parkland Health & Hospital System is a political subdivision of the State of Texas. *See* TEX. HEALTH & SAFETY CODE § 281.001, *et seq*.

The rationale behind the policy or custom requirement is that local governmental bodies cannot be held liable for the acts of their employees based solely on a theory of *respondeat superior* or vicarious liability. *See Monell v. Dept. of Social Serv.,* 436 U.S. 658, 691-94 (1978). Thus, liability may be imposed upon the governmental entity when an employee or agent was acting pursuant to the entity's official custom or policy. *Id.* at 694. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011). Additionally, the custom or policy must be the "moving force" behind the constitutional violation. *Monell,* 436 U.S. at 694-95. Moreover, in order to state a claim upon which relief can be granted, "[t]he description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997); *see also Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984) (holding that a plaintiff must plead specific facts which identify the policy, properly connect the policy to the governmental entity itself—including identifying the final policymaker, and show that his injury was incurred because of the application of that specific policy).

In this case, Plaintiff alleges that his substantive due process rights were violated when Menchaca performed physical examinations on Plaintiff which resulted in Menchaca inappropriately fondling Plaintiff's genital area. Plaintiff avers that these violations occurred due to Parkland's policy of conducting physical examinations or assessments on patients. Specifically, Plaintiff claims that because Menchaca "did what's called a[n] assessment (physical examination) on plaintiff by which is Parkland policy ... but, not the sexual activities (Battery/Bodily Integrity) of fondling

5

plaintiff's genital area at which fully depriv[ed] me of every right within Parkland's policy and custom as well as the United States Constitution[] . . . ." (Pl.'s Am. Compl. at 3.) Plaintiff additionally alleges that no follow-up was performed by Parkland, pursuant to their policy, once Plaintiff had reported the sexual assault by Menchaca to the other medical staff. (*Id.*) Plaintiff claims that if a follow-up had been performed by Parkland then it would have revealed a small cut and bruise on Plaintiff's right hip and groin area. (*Id.* at 3-4.)

Attached to his original complaint, Plaintiff submitted a form that was completed by the Texas Department of Health and Human Services, Centers for Medicare and Medicaid Services after an onsite review of Parkland was conducted following Plaintiff's complaint regarding the alleged incident with Menchaca. (*See* Pl.'s Compl. at 19-28.) Upon examination of this form, the Court is able to ascertain Parkland's policy which Plaintiff identifies and complains of in his amended complaint. The relevant policy is entitled "Assessment-Reassessment" and provides:

> All patients receiving inpatient...and appropriate follow-up assessments based upon their individual needs including physical, psychological...care and/or treatment provided by all health care professionals will be based on each patient's specific needs...each patient is to be reassessed according to the guidelines established by the clinical discipline and/or significant change in patient condition...all involved caregivers are responsible for communication of patient care needs...focused assessment...in a focused assessment the nurse is "focusing" on a patient problem or complaint. A focused assessment is defined as a reassessment of one or more body systems in response to a new abnormal finding, an existing abnormal finding, or documentation of a previous abnormal finding that has returned to within defined limits...

*Id.* at 24-25. Instead of alleging that Menchaca acted pursuant to a Parkland policy, which resulted in Plaintiff's due process rights being violated, Plaintiff alleges that Menchaca violated the aforementioned policy. Plaintiff clearly states that the policy is devoid of any permissible sexual

6

activities, however, it is these activities that form the basis of Plaintiff's alleged constitutional violations. In addition, Plaintiff's claim that Parkland did not conduct a follow-up assessment after he reported the sexual assault to other medical staff is another allegation that employees did not act pursuant to Parkland policy. Plaintiff has failed to demonstrate that Parkland's policy was the moving force behind the infringement of Plaintiff's constitutional right to bodily integrity and to be free from sexual abuse. Instead, Plaintiff alleges that Menchaca and other medical staff failed to abide by Parkland's policy. Such allegations cannot form the basis for § 1983 municipal liability.

In construing Plaintiff's complaints in a light most favorable to Plaintiff, it appears that he may allege that Parkland has a custom or policy regarding supervision of its employees that allowed Menchaca to sexually assault him. "A municipality, with its broad obligation to supervise all of its employees, is liable under § 1983 if it supervises its employees in a manner that manifests deliberate indifference to the constitutional rights of citizens." *Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d 443, 453 (5th Cir. 1994). *See also City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989) (holding that the failure to train employees may only constitute a policy or custom for § 1983 purposes if it amounts to deliberate indifference to the rights of individuals). The Fifth Circuit has defined deliberate indifference as a "lesser form of intent." *Doe,* 15 F.3d at 453 n.7 (quoting *Germany v. Vance*, 868 F.2d 9, 18 n.10 (1st Cir. 1989)). In cases wherein a plaintiff alleges a failure to supervise, knowledge may be imputed to the officials and, thus, deliberate indifference may be found if there is a history of widespread abuse. *Bowen v. Watkins*, 669 F.2d 979, 988 (5th Cir. 1982). However, a court cannot find deliberate indifference when knowledge cannot be imputed to the policy-making officials of the municipality. *Batiste v. City of Beaumont*, 421 F.Supp.2d 969, 987 (E.D. Tex. 2005).

Here, Plaintiff has failed to allege that Parkland supervises its employees in a way which

results in deliberate indifference to the constitutional rights of its patients. Plaintiff does not allege that Parkland has a history of widespread abuse in failing to supervise its nurses or any other circumstances wherein this Court could impute knowledge to Parkland's policy-making officials. Accordingly, the Court cannot find that deliberate indifference exists in order to establish § 1983 municipal liability against Parkland for its supervision of, or failure to supervise, its employees.

Municipal liability under § 1983 may also be found where a governmental entity violates a customary policy as opposed to a written policy. A customary policy is not officially authorized by the governmental entity, but instead is a persistent or widespread practice which is "so common and well settled as to constitute a custom that fairly represents [official] policy." *Beamon v. Parkland Hosp.*, 3:08-CV-0693-D, 2008 WL 4061417, at *2 (N.D. Tex. Aug. 20, 2008) (quoting *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995)). "Isolated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for municipal section 1983 liability." *Piotrowski v. City of Houston*, 237 F.3d 567, 581 (5th Cir. 2001). Here, although Plaintiff mentions that Parkland was found guilty and fined because of its deficiencies within the administration, he fails to allege sufficient facts which would demonstrate that Parkland has a persistent or widespread practice which resulted in Plaintiff's constitutional violations. (Pl.'s Am. Compl. at 8-9.) Furthermore, Plaintiff alludes to an article in the Dallas Morning News which made his alleged incident of sexual assault public, however, Plaintiff still fails to plead any facts which would connect this sexual incident to any other practices of Parkland.[3] (Pl.'s Resp. to Mot.

---

[3] The Court notes that in his second motion to amend his complaint (doc. 25), Plaintiff goes into great detail regarding the article in the Dallas Morning News. (Pl.'s Second Am. Compl. at 4-5.) However, again, Plaintiff fails to plead any facts which would turn this alleged isolated incident with Menchaca into a persistent or widespread practice of Parkland. (*See id.*)

to Dismiss at 4.)

In sum, Plaintiff has failed to plead sufficient facts to establish municipal liability under § 1983 because he has failed to demonstrate that a policy or custom of Parkland existed which served as the moving force behind Plaintiff's alleged due process violations. *See Meadowbriar Home for Children, Inc., v. Gunn,* 81 F.3d 521, 532-33 (5th Cir. 1996) (holding that in order to establish municipal liability, a plaintiff must plead facts which demonstrate that: (1) a policy or custom existed, (2) the governmental policymakers actually or constructively knew of its existence, (3) a constitutional violation occurred, and (4) the custom or policy served as the moving force behind the violation). In addition, Plaintiff has failed to plead any facts identifying the official municipal policymaker who may be held responsible for enforcing a policy that caused Plaintiff's injuries. *See Piotrowski*, 237 F.3d at 578-79 (explaining the necessity for municipal culpability, which can be shown through either actual or constructive knowledge, on behalf of the official policymaker, of the alleged policy which caused the constitutional violation). Plaintiff has neither shown municipal causation nor municipal culpability and, thus, his § 1983 claims against Parkland should be dismissed.[4] *See id.* at 578 n.17 (there must be both municipal causation and culpability in order to hold a municipality liable under § 1983).

**Federal Tort Claims Act**

In Plaintiff's response to Parkland's Motion to Dismiss, and in his response to this Court's questionnaire, Plaintiff avers that Parkland should also be held liable pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq*. (Pl.'s Resp. to Mot. to Dismiss at 5; Pl.'s Resp. to

---

[4] The Court need not address whether a constitutional violation occurred because municipal liability under § 1983 is premised upon a triggering policy or custom, for which Plaintiff has not alleged sufficient facts.

Questionnaire at 4.) However, the FTCA is not applicable to Parkland, as Parkland is not a department or agency of the federal government. *See Farmer v. United States*, No. 12-31255, 2013 WL 4780539, at *1 (5th Cir. Sept. 9, 2013) ("[t]he FTCA requires plaintiffs alleging tort claims *against the federal government* to file an administrative claim with the relevant agency . . . .") (emphasis added); 28 U.S.C. § 2671 (the term "federal agency" as used in this chapter "includes the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States . . . ."). *See also* TEX. HEALTH & SAFETY CODE § 281.001, *et seq*. (Dallas County Hospital District d/b/a Parkland Health & Hospital System is a political subdivision of the State of Texas). Furthermore, because Parkland is a governmental unit of Texas, it has sovereign immunity and is excluded from lawsuits which arise from intentional torts such as assault, battery, or false imprisonment. *See* TEX. CIV. PRAC. & REM. CODE § 101.057(2).

Because the Court finds that no substantial federal claim still exists, insofar as Plaintiff alleges any state-law causes of action against Parkland, such as breach of contract, assault, battery, or negligence, the Court recommends that these state-law claims be dismissed without prejudice. *See Parker & Parsley Pet. Co. v. Dresser Indus.,* 972 F.2d 580, 585 (5th Cir. 1992) (explaining that the Fifth Circuit's "general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed."); *Wong v. Stripling,* 881 F.2d 200, 204 (5th Cir. 1989) (same).

**Leave to Amend**

District courts typically allow plaintiffs at least one opportunity to amend their pleadings before dismissing a case. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Pursuant to this Court's Pretrial Scheduling Order (doc. 57), Plaintiff was

afforded approximately eight months from the time his complaint was filed in which to amend his pleadings without filing leave to amend with the Court. In that time period, Plaintiff sought leave to amend his complaint twice and both of those requests were granted. Nonetheless, despite Plaintiff being allowed numerous opportunities to amend his complaint, Plaintiff has still failed to state a claim upon which relief can be granted. While the alleged circumstances surrounding Plaintiff's hospitalization at Parkland are unfortunate, Plaintiff's pleadings simply do not allege a federal cause of action against Parkland. Instead, Plaintiff's pleadings appear to allege the state-law tort of assault and/or battery against Menchaca and, possibly, a state-law claim of negligence against Parkland arising from the negligent acts of its employees. With that said, this Court finds that the defects in Plaintiff's pleadings are incurable and providing leave to amend would be futile and unnecessary, thus, Plaintiff's claims against Parkland should be dismissed without granting further leave to amend. *See id*. at 329 (leave to amend need not be granted if the defects in the plaintiff's pleadings are clearly incurable); *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir.1986) (dismissing case because allowing another pleading "would do nothing but prolong the inevitable"); *Hart*, 199 F.3d at 248 n.6 (dismissal of a claim that fails to meet the pleading requirements is appropriate, without granting leave to amend again, if "the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so.").

**Recommendation**

For the foregoing reasons, this Court recommends that the District Court **GRANT** Parkland's Motion to Dismiss (doc. 41) pursuant to Rule 12(b)(6) and dismiss Plaintiff's federal claims against Parkland with prejudice and dismiss any state-law claims against Parkland without prejudice to refiling in state court.

**SO RECOMMENDED**, October 21, 2013.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).